No. 13,406.

MAYFIELD v. THE STATE.

CRIMINAL LAW.—*Affidavit for Continuance.*—*Absent Witness.*—*Admission by State as to Truth of Facts Stated:*—*Instruction.*—Where it is stated in an affidavit for a continuance, that a certain fact can be proved by an absent witness, and the State, in order that an immediate trial may be had, admits the truth of such fact, an instruction to the jury, that it must be taken as true for the purposes of the trial, but that "the weight and effect of such fact upon the merits is a question exclusively for your determination," is not erroneous.

SAME.—*Homicide.*—*Self-Defence.*—*Threats.*—*Witness.*—*Contradictory Statements Out of Court.*—*Instruction.*—Upon a trial for homicide, where it was claimed by the defendant that he acted in self-defence, and that the deceased had previously made threats of violence, the father of the latter was asked on cross-examination whether, prior to the killing, he had not, in the presence of the deceased and one S., said to the latter that "if those Mayfield boys (meaning the defendant and his brother) don't watch they will get hurt, for George (meaning the deceased) will shoot them." He answered that he did not recollect making such a statement. S. was afterward introduced for the defendant, and testified that at the time and place mentioned such witness did make the statement in question, in the presence of himself and the deceased, and that the latter was apparently giving attention thereto.

*Held*, that an instruction, limiting S.'s testimony to its effect as impeaching evidence only, was erroneous.

From the Sullivan Circuit Court.

*D. W. Voorhees, J. C. Briggs, J. T. Hays, W. C. Hultz, J. W. Shelton, J. S. Bays* and *H. J. Hays*, for appellant.

*J. W. Gordon, J. C. F. Gordon, S. Axtell* and *C. E. Barrett*, for the State.

NIBLACK, J.—This was a prosecution against the appellant, Elias W. Mayfield, for the alleged murder of George D. Litton, on the 3d day of September, 1885, in the county of Greene, in this State. The charge contained in the indictment constituted murder in the first degree. The venue was changed to the Sullivan Circuit Court, where a trial resulted in a verdict finding the appellant guilty of voluntary manslaughter, and in a sentence of confinement in the State prison for a period of ten years. Questions upon the evidence and upon instructions, given as well as refused, were reserved at the trial.

The appellant and the deceased were near neighbors, each residing with and constituting a part of his father's family at the time of the homicide. The killing was admitted. The prosecution was conducted upon the theory that the act was committed purposely and premeditatedly; while on behalf of the appellant it was claimed that, in taking the life of the deceased, he acted entirely in self-defence.

It was shown at the trial that, on the morning of the 3d day of September, 1885, the appellant left home with the avowed purpose of going out some distance away to hunt squirrels; that he was armed with a double-barrelled shotgun loaded with powder and small shot; that on his way he met the deceased in a lane, which was a public highway; that some kind of an altercation immediately ensued, whereupon the appellant fired both barrels of his gun at the deceased, killing him instantly; that no one else was present at the time of the homicide; that a feud, sometimes taking the form of high words and violent demonstrations, had existed between the two families for several years previously. The State relied upon some alleged admissions, and other circumstances, as tending to establish a premeditated purpose to kill the deceased. For his justification in the use of a deadly weapon, the appellant relied upon previous threats, and upon aggressive demonstrations of violence, both previously and at the time of the homicide.

Before the trial began the appellant filed his affidavit, stating that he could not safely go to trial without the testimony of his mother; that he could prove by her that on the morning during which the deceased was killed, he started to a certain creek bottom for the purpose of hunting squirrels, and that it was this circumstance which took him along the lane, where he met the deceased. The prosecuting attorney thereupon admitted that what the appellant alleged he could so prove by his mother was true, and upon that admission the trial proceeded.

As applicable to that admission the court instructed the jury that, "As a matter of law, I will say to you that the facts stated in the affidavit for a continuance, (in) which the defendant alleged (what) he expected to prove by his mother, Sarah E. Mayfield, and which has been read * * * in your hearing, must, for the purposes of the trial, be taken as true. The weight and effect of such facts upon the merits is a matter exclusively for your determination."

It is argued that the last clause of this instruction tended to diminish the weight and influence which the law attached to the admission to which the instruction referred, and that, in consequence, the instruction was erroneous, citing *Wassels* v. *The State*, 26 Ind. 30, and section 1781, R. S. 1881. But we see no reason for placing such a construction upon the clause in question. The truth of an admitted fact in a cause is one thing, and its materiality or relative importance, as affecting the merits of the controversy, may be, and often is, quite another thing. The instruction, as a whole, simply recognized that distinction, and hence stated the law correctly.

Thomas C. Litton, the father of the deceased, was called as a witness, and testified on behalf of the State. On his cross-examination he was asked whether, about the last of February or the first of March, 1885, at his house, and in the presence of his son, George D. Litton, the deceased, and one

William Spencer, he did not say to him, Spencer, in sub-
stance: "If those Mayfield boys (meaning the appellant and
his brother Charles) don't watch they will get hurt, for George
will shoot them; that he (George) is not afraid of them."
To this the witness answered that he did not recollect mak-
ing such a statement.

Spencer was afterwards introduced as a witness for the ap-
pellant, and, amongst other things, testified that he was at
the house of the witness Litton about the last of February
or the first of March, 1885; that said witness Litton said to
him, the said Spencer, that " if those Mayfield boys (mean-
ing the appellant and his brother Charles) don't watch out
they will get hurt, for George (meaning the deceased) will
shoot them; he is not afraid of them;" that they and the
Litton family were all arranging to start to church at the
time; that the deceased was present when this statement was
made, and looked around at his father at the time in a man-
ner indicating that he was giving attention to what was said,
as stated.

As bearing upon contradictory statements made by wit-
nesses out of court, the court gave a general and hypotheti-
cal instruction, which, in its practical application to the tes-
timony given by Spencer as above set out, told the jury that
such testimony could only be considered as evidence im-
peaching, or tending to impeach, the testimony of the witness
Litton, and ought not, therefore, to be regarded as either
proving, or tending to prove, the truth of any alleged or
independent fact in the cause.

That instruction is sought to be sustained upon the ground
that as the foundation for the testimony of Spencer was laid
by addressing a question to Thomas C. Litton on his cross-
examination, Spencer's testimony could only be considered as
pertinent and material in so far as it contradicted, and in
that way tended to impeach, the witness Litton, and was,
hence, not competent for any other purpose.

There is, however, no rule of evidence, known to us, which

will support such a distinction as that contended for. Spencer's testimony might have been introduced as evidence in chief, tending to prove an implied threat on the part of the deceased, but its force and effect as evidence were not diminished by having been brought out in a less direct way. Once properly before the jury, that tribunal was entitled to consider it for whatever it fairly tended to establish concerning any matter in controversy at the trial.

Wharton, in his work on Criminal Evidence, at section 679, says: "If A., when in B.'s presence and hearing, makes statements which B. listens to in silence, interposing no objection, A.'s statements may be put in evidence against B. whenever B.'s silence is of such a nature as to lead to the inference of assent." On the same subject, see 1 Greenleaf Ev., section 197.

Whether the conduct of the deceased, as testified to by Spencer, amounted to an implied threat against the appellant, became a material question for the jury, and, consequently, the instruction which placed a different construction upon Spencer's testimony was erroneous.

We attach more importance to this error than we might do, for the reason that the case is not, in all respects, a satisfactory one on the evidence.

The judgment is reversed, and the cause remanded for a new trial.

The clerk will give the necessary notice for the return of the prisoner.

Filed May 10, 1887.