## CLEVELAND TRUST CO v BOYLE

Ohio Appeals, 8th Dist, Cuyahoga Co

No 15634. Decided Dec 21, 1936

Frank T. Cullitan, Prosecuting Attorney, Cleveland, and Margaret R. Lawrence, Asst. Prosecuting Attorney, Cleveland, for appellant.

Thompson, Hine & Flory, Cleveland, for appellee.

LEMERT, PJ, MONTGOMERY and SHERICK, JJ, (5th Dist) sitting by designation.

### OPINION

By LEMERT, PJ.

This case comes into this court on appeal by the appellant, who was one of the defendants below, from the judgment of the Common Pleas Court of Cuyahoga County.

The court below held that John J. Boyle, Treasurer of Cuyahoga County, Ohio, was estopped from asserting a lien for the aggregate amount of taxes, assessments, penalties and interest for the last half of the year 1927 and the whole of the years 1928 and 1929, senior to the mortgage of The Cleveland Trust Company.

It appears from the record, by the pleadings and testimony offered by the appellee, The Cleveland Trust Company that on June 1st, 1929 the Bolivar Building Co. executed a first mortgage note in the sum of $18,000 and at the time of the execution and delivery of the said note the said The Bolivar Building Company executed and delivered to the appellee, The Cleveland Trust Company a mortgage deed conveying to The Cleveland Trust Company the property in question.

The mortgage deed was filed for record on June 26th, 1929.

On August 25th, 1933, the appellee obtained a judgment against The Bolivar Building Company in the sum of $16,215.68, because of default in payments.

On July 21st, 1934, foreclosure proceedings were filed against the said property in the instant action for failure to perform the conditions in the mortgage deed, which included the payment of taxes and assessments levied against the said premises.

The record discloses that before making the loan to The Bolivar Building Company the Abstract Company examined the tax duplicates of the treasurer and reported to the appellee that the taxes for the last half of 1927 and the first half of 1928 were marked "paid." An analysis of the record shows the last half of 1927 entered as paid on September 1st, 1928 ............ $1639.87
First half of 1928 entered as paid on March 8th, 1929 ............. 1424.65

TOTAL ... ... ... ... ... .....$3064.52

The appellee contends that had it known that there was any claim or question about these taxes it would have either refused the loan or used part of the proceeds to take care of the taxes.

The record concerning the other taxes in question is as follows:

Last half of 1928 entered as paid
on Sept. 4, 1929 .............1,424.66
First half of 1929 entered as paid
on March 28, 1930 .............. 1,455.80
Last half of 1929 entered as paid on
Oct. 6, 1930 .................... 1,455.81
———————
TOTAL ...... ......... ......$4,336.27

The total amount of taxes in dispute for the last half of 1927, the whole of 1928 and 1929, including penalties, is the sum of $8,140.86.

There is in this case no contradiction as to the evidence.

The question, or questions of law, may be stated as follows:

1. When a mortgagee, in good faith, relies upon entries made by the County Treasurer, on the tax duplicate, that certain taxes on the real estate are "paid", both in making the original loan and thereafter in forbearing to exercise a right under the mortgage, to take over the income of the property, if the taxes and interest are not paid—can the treasurer in this action assert that these taxes were not paid and are a lien superior to the lien of the mortgage. No question is involved of any reliance on tax receipts, as distinguished from the official entry on the tax duplicate; neither is there any question involved of the rights of the owner of the property.

2. If the decision of the above question is favorable to the mortgagee, it becomes unnecessary to consider the second question, which is: After the treasurer has made his official entry on the tax duplicate of taxes as "paid," so that by statute the treasurer has become personally liable for this amount and also by statute, has the right of recovery in his own name if such taxes have not in fact been paid, is there any authority or right in the treasurer, after the expiration of about five years, to make any entries in his tax duplicates, without hearing or notice, which creates a lien upon the real estate for such taxes, superior to the lien of the mortgage.

As hereinbefore stated, the mortgage herein foreclosed was executed in June, 1929. Before making the loan, The Cleveland Trust Company had made an examination of the official tax duplicates by The Cuyahoga Abstract Company, and found that the taxes for the last half of 1927 and the first half of 1928 had been formally entered on the duplicate by the treasurer as "paid" (the last half of 1928 was still "current"). This entry was relied upon by the Cleveland Trust Company in making the loan. The undisputed testimony is that it would not have paid out the money to the borrowers if these taxes had been unpaid and delinquent.

Thereafter the treasurer made similar formal entries on the tax duplicate showing that the last half of 1928 and all of the 1929 taxes were "paid." The representative of the mortgagee regularly examined the tax duplicates as to this property, the latest examination being made on November 15th, 1933. He found these taxes so entered on the duplicate as "paid" and the uncontroverted evidence is that the mortgagee relied upon these entries and forebore taking the action to protect itself, which it would have taken if it had not been for this official record that the taxes were paid.

This protection was primarily its right to take over the collection of the income of the property if taxes and interest were not paid.

We know from the record that we have more than mere testimony that the mortgagee would have thus protected itself; we have what it actually did later. In May, 1933, taxes for 1930 and 1931, amounting to the smaller amount of approximately $7700, were unpaid and had not been marked "paid" on the treasurer's duplicate. Thereupon, on May 8th, 1933. the mortgagee did the very thing that it would have done two or three years earlier if it had not been misled by the treasurer's entries, and did take over the management and the rents of the property and applied them to the debt. In August, 1933, the plaintiff, though still ignorant of any claim about the taxes here in question, took judgment against the owner of the property and it was not until some time later than November 15th, 1933, that the treasurer attempted to create a lien for these 1927-1929 taxes, by making an entry in a so-called "Additions" book. The first knowledge that mortgagee had of this claim or this entry was in February, 1934.

The trial court found as a fact, in its journal entry, that the mortgagee examined these tax duplicates; that it relied upon the entry that these taxes in question were paid; that it changed its position in reli-

ance upon the entries and forbore to take action which it would have taken if these taxes had not been entered as paid; and that the treasurer is estopped from asserting a lien for these taxes in question, senior to the mortgage. The journal entry directs that these taxes in question be paid from the proceeds of the sale, after paying the lien of the mortgage.

So that, with the question thus presented, we are face to face with the question of estoppel. Estoppel, when properly applied, operates upon the highest principles of morality, and recommends itself to the common sense and justice of everyone. We have here all the elements which estop the treasurer from now claiming that these taxes were not paid, and are a lien senior to the mortgage: First, the act of the treasurer in making his official entry on the tax duplicate, representing that these taxes had been paid. Second, the reliance upon this entry and representation by the mortgagee, in making the loan and in forbearing to take over the income. Third, the prejudice to the mortgagee and the injustice that would result in now allowing the treasurer to say that his representation was false and that he has a large lien which must be paid ahead of the mortgage.

The law has laid down a sound, clear and practical system which serves the public interest in providing official records upon the faith of which real estate sales and mortgages may be made and protects the County Treasurer by making the treasurer and his sureties liable to the county for the amount that he has entered paid, and finally is fair to the treasurer in giving him personally the right to collect this money if it has not in fact been paid.

The importance of some provisions by which mortgagees and purchasers may rely on this form of record that the taxes are paid, ought to meet no argument. This is the same public policy that is shown by our statutes providing that a mortgagee or purchaser may safely rely upon the official record of deeds and mortgages. Accordingly, the General Assembly has laid down the whole system of recording of deeds and mortgages by public officials and provided that purchasers and mortgagees may rely upon such records. They likewise recognize that knowledge as to whether taxes are paid or are a prior lien on the property is of equal importance, and so they likewise provide that the treasurer shall not mark the duplicate "paid" until

he has actually received payment, and if he does so he is thereafter the one charged with those taxes so marked.

From this legislation has flowed freedom and safety for the people of this state in dealing in real estate and in paying purchase price, or loan. It is a matter of common knowledge that no loan is made on mortgage, and no purchase price is paid, by any sensible person, until he has first had his agent, usually an abstract company, search first the title records in the Recorder's office and, second, the tax duplicates, to find what taxes are unpaid. When he has done this, he may safely act.

So that it brings us directly to this proposition: If a purchaser or mortgagee cannot rely upon the official tax duplicate, for knowledge as to taxes, there is no place whatever, to which he may turn, or where he can secure such information.

It cannot be doubted that all the elements of estoppel are here, but it is suggested in appellant's brief, somewhat faintly, that "the doctrine of equitable estoppel is by no means an established principle of law as far as public officers are concerned. On reason and principle, as well as on established authority, there is no basis for any such distinction as shown by the record in this case.

This question was well decided by the Pennsylvania Supreme Court in the City of Philadelphia v Anderson, 142 Penn. 357, where the city was held to be estopped from collecting taxes marked "paid", as against a purchaser.

"This is the book of the city, made up by the officials who represent her, and remaining in their custody. It is the evidence of her demands upon real estate within her borders. A purchaser must take notice of this book, and to enable him to know with certainty what appears upon it, the law makes it a duty of the receiver of taxes to certify the liens against any particular piece of real estate. This is a specific duty imposed upon him by law as the representative of the city, the collector of its taxes, and the custodian of its records. In its discharge he represents his principal, speaks for it and binds it. If his certificate is false and misleading, one who acts upon it in good faith has a right to insist that the city is bound by it. The city is not above the duty to deal fairly and justly with its citizens, and to speak the truth to them when the duty to speak for their information rests clearly on it."

In the case of Curnan v City of New York, 79 N. Y., 511, it was held:

"A fact, admitted by a municipal corporation through its officer duly and properly acting within the scope of his authority, is evidence against it; and cannot be withdrawn to the prejudice of one who in reliance upon it has changed his position in respect to the matter affected thereby."

In the opinion of that case the learned judge stated:

"An assessment roll is akin to a judgment, and if an assessment is erroneously discharged of record, its lien cannot be restored so as to affect bona fide purchasers, or others standing in a similar relation whose transactions were entered into in ignorance of the error and in reliance upon the truth of the record."

In 11 NE 618, being an Iowa case, it was held:

"Where a purchaser of real estate is at the time of such purchase given a certificate by the county treasurer of the county where the lands are situate that there are no delinquent taxes upon the land, and such purchaser also causes the tax books to be examined and no taxes are delinquent as shown by such books, he is entitled to the protection of an innocent purchaser as to taxes for prior years that were at the time actually delinquent."

"There should be some way by which a person desiring to purchase real estate can with reasonable certainty ascertain what liens are thereon, and the exact condition of title. Real property is daily purchased because such in fact is the rule. If it be otherwise as to taxes, this constitutes an exception to the general rule. The statute should not be so construed unless the language employed or justice and equity absolutely so required."

In the instant case it must be remembered that this is not a controversy as to the person paying the taxes to the county, but is one as to an innocent third person. It is of the essence of justice to have a fixed standard and that there should not be one standard for the state or its municipal officers and another for the citizen. If it should be held that the county is not estopped in a case like the instant one, it would seriously interfere with the facility with which real estate transactions are conducted.

We deem it unnecessary to burden this opinion with a further citation of authorities, but desire to say that not only on principle but on the overwhelming weight of authority it is firmly established that in circumstances like the present case the treasurer is estopped to claim that the official entry is false. Indeed, so far as we are able to find out the authorities are unanimous except possibly for South Carolina.

The appellant argues at considerable length that an estoppel could not lie until the appellee, The Cleveland Trust Company, has shown an actual loss by reason of its reliance on the entries in the tax duplicates. We believe that in making this argument, appellant has confused the nature of an estoppel, with the nature of a damage suit for misrepresentation. The fundamental basis of estoppel is the prevention of loss, which would follow if a party was allowed to deny the truth of what he had earlier said. In the instant case all that the mortgagee needs to say is that it did rely on the representation of the duplicate, that because of such reliance it gave up some rights which it had, and that therefore a court of equity will not now hear the treasurer say that the representation was false.

We are of the opinion that the court below strictly confined itself to the proper working out of such estoppel because its decree does nothing more than leave the mortgagee in the same position that he would have been if the representation that the taxes were paid, had been true; that is, the taxes which were entered "paid" on the duplicate, are made junior to the mortgage. This means that if it should prove on foreclosure sale, that there is enough value in the property both to pay the mortgage and the taxes, then the taxes will be paid, but if the property should sell for less than this total, then the treasurer cannot be heard to say that he should come in for these taxes, at the expense of the plaintiff.

So, entertaining the views as herein expressed, we deem it unnecessary to pass upon the second proposition submitted in this case. The evidence being uncontroverted that the mortgagee examined the official tax duplicate and relied upon the official entries that these 1927, 1928 and 1929 taxes had been paid. This entry, by law, meant that the treasurer had received "lawful moneys" and thereafter the treasurer was personally responsible to the county for these taxes, and in case of mistake

had a right, in his personal capacity only, to collect from the taxpayer. They are no longer a lien on the property.

There is no basis for the doubt, expressed by appellant, as to whether a treasurer can be estopped. The overwhelming weight of authority, both in Ohio and in many other cases squarely in point, is that there is no distinction between a treasurer, and a private person.

It is of the first importance, as a matter of public policy, that a purchaser or mortgagee be enabled to rely upon the tax duplicate, in dealing with real estate, and there is no other possible record on which he could rely.

If the decision of the court below be reversed, then there is no way in which a purchaser or mortgagee can safely deal with real estate.

So there will be the same finding in this court as there was in the court below. Exceptions may be noted.

LEMERT, PJ, MONTGOMERY and SHERICK, JJ, concur.